UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARITZA SANTA CARRASQUILLO,**
　　Plaintiff

　　　　v.　　　　　　　　　　　　　　　　**CIVIL NO: 01-1428 (DRD)**

**CESAR REY HERNANDEZ, et al**
　　Defendants

## OPINION AND ORDER

　　Pending before the Court is defendants' *Motion to Reconsider* (Docket No. 102) and plaintiff's *Response in Opposition to Defendants' Motion to Reconsider* (Docket No. 103). On November 5, 2003 the Court referred the instant case to U.S. Magistrate Judge Aida M. Delgado for a Report and Recommendation on defendants' *Motion for Summary Judgment* (Docket No. 75) and all other pending motions (Docket No. 94).

　　On February 19, 2004, the Magistrate Judge entered its Report and Recommendation ("R & R") in which she **Denied in part and Granted in part** the defendants' *Motion for Summary Judgement* (Docket No. 94). Although the defendants timely filed their *Objections to Report and Recommendation* (Docket No.95 and 96) the Court **SUMMARILY DENIED** defendants' objections to the Magistrate's R & R for violating the Court's *Order Setting Initial Scheduling and Case Management Conference* (Docket No. 50) in which the Court made clear to all parties that all motions to be submitted to the Court were limited to a maximum of twenty-five (25) pages in length. The defendants submitted a forty-five page objection to the Magistrate's report, twenty (20) in excess of the maximum length allowed without requesting leave to file their motion in excess of said length. Therefore, the Court **DENIED** defendant's *Objection to Report and Recommendation* as forewarned at Docket No. 50. Consequently, the Court deemed the Magistrate's R & R as **unopposed.**

　　Nevertheless, the Court granted defendants until April 16, 2004, to file a motion to reconsider in order to resubmit their objections within the maximum number of pages allowed, and if timely filed in turn, this would enable the defendants to submit their objections to the Magistrate Judge's R & R in compliance with the Court's Local Rules. The defendants have duly submitted their *Motion to Reconsider* (Docket No.102, 23 pages) in compliance with the Court's orders. Therefore,

in view of defendants compliance with the Court's order, the Magistrate's R & R is deemed duly **opposed**.

## I. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV. P. 72(b); Rule 503, Local Rules, District of Puerto Rico. See Mathews v. Weber, 423 U.S. 261 (1976). Of course, an adversely affected party may contest the Magistrate's R & R by filing its objections within ten (10) days after being served a copy thereof. See Local Rule 510.2(A); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

See 28 U.S.C. § 636(b)(1).

However, pursuant to FED.R.CIV. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992). See also Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); Keating v. Secretary of H.H.S., 848 F.2d 271, 275 (1st Cir. 1988); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). See generally United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

Provided plaintiffs have objected the determinations addressed by the Magistrate, the Court

shall make a *de novo* review of the Magistrate Judge's R & R.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is a procedural device designed to screen out cases that present no trial worthy issues. *See* Plumley v. Southern Container Inc., 303 F.3d 364, 368-69 (1st Cir. 2002); McCarthy v. N.W. Airlines, Inc., 56 F.3d 313, 314-15 (1st Cir.1995). The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. *See* McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995).

In conventional summary judgment practice, the moving party has the initial responsibility of suggesting the absence of a genuine issue of material fact. *See* Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir.1992). The moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). That requires supporting the motion, by affidavits, admissions, or other materials of evidentiary quality, as to issues on which the movant bears the burden of proof. *See* McIntosh v. Antonino, 71 F.3d at 33. A fact is "material" if it potentially could affect the suit's outcome. Cortes-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. Id. Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Once the movant has fulfilled this obligation, the burden shifts to the summary judgment target to demonstrate that a trial worthy issue exists. *See* Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir.2000). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the

evidence. *See* Cortés-Irizarry v. Corporación Insular, 111 F. 3d at 187; *see also* Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (*citing* Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987)). Further, unsettled issues of motive and intent as to the conduct of any party – as may arise in actions under §§ 1983 and 1985 – will normally preclude the Court from granting summary judgment. *See* Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

### III. LEGAL ANALYSIS

As stated previously, defendants have complied with the Court's orders and have submitted their objections to the Magistrate Judge's R & R within the constraints imposed by Local Rule 7.1(e). The Court notes that plaintiff duly complied with the Court's *Amended Order* (Docket No. 100) and filed their *Opposition to Motion to Reconsider* (Docket No. 103). However, plaintiff's opposition to defendants' motion for reconsideration choose to oppose defendants' *Motion to Reconsider* (Docket No.102) rather than raising any objections to the Magistrate's R & R. Wherefore the Court will only review those portions of the the Magistrate's Report and Recommendation objected by defendants. "Absent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985).

Defendants' *Motion to Reconsider* (Docket No.102) raises several objections to the Magistrate Judge's R & R, to wit, firstly, that plaintiff failed to show that her political affiliation was a substantial or the motivating factor behind the adverse personnel action. Secondly, that plaintiff failed to show that defendants' were involved in their personal capacity in the impermissible adverse employment transaction. Thirdly, that defendants' are entitled to qualified immunity regardless of plaintiff's claims and lastly, that plaintiff's equal protection claim fails to show that others similarly situated have been treated differently. The Court will address each defendants' objection in seriatim fashion.

## PRIMA FACIE CASE OF POLITICAL DISCRIMINATION

To prevail in a §1983 claim, plaintiffs have to demonstrate defendants deprived them of their federal constitutional rights, privileges or immunities, while acting under color of state law. Romero Barceló v. Hernández Agosto, 75 F3d 23, 32(1st Cir., 1996). In order to establish a prima facie case of political discrimination pursuant to §1983, plaintiffs have to establish they engaged in a constitutionally protected conduct and this conduct was the motivating factor in the adverse action. Id. *See also* González de Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir., 2004); Mt Healthy City Sch. Dist. Bd. v Doyle, 429 U.S. 274, 287 (1977). Further, plaintiffs must demonstrate a causal relation between defendant's conduct and plaintiffs' political beliefs. La Rou v Ridlon, 98 F.3d 659, 663(1st Cir. 1996). That is, "[t]he plaintiff must point 'to evidence on the record which, if credited, would permit a rational finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus."González de Blasini v. Family Department 377 F.3d at 85 (*quoting* La Rou v Ridlon, 98 F.3d at 661, *quoting* Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)). Although circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must make a fact specific showing that a causal connection exists between the adverse treatment and their political affiliation. Avilés-Martínez v. Monroig, 963 F. 2d 2, 5 (1st Cir.1992).

In sum, a plaintiff who claims he or she was a victim of political discrimination "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory *animus*. It is the plaintiff who bears the initial burden of showing that political discrimination was the motivating factor in the adverse decision. *See*, Avilés-Martinez v. Monroig, 963 F. 2d at 5; Mt Healthy City School District Board v. Doyle, 429 U.S. at 287. Only after plaintiffs have established their prima facie case, the burden shifts to defendants who must either negate knowledge as to the political affiliation of plaintiff or establish that they would have taken the same action regardless of plaintiffs' political beliefs. Id. *See also*, Sánchez-López v. Fuentes Pujols, 375 F.3d at 131.[1]

The jurisprudence has established a tripartite burden shifting test in cases of political discrimination. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287. The first part

---

[1] Notwithstanding, different that in Title VII cases, in political discrimination cases pursuant to §1983 in order to establish a prima facie case of discrimination plaintiffs do not have to necessarily establish that they were substituted by members of the opposing party although, without a doubt, said fact would definitely weight in favor of an inference of discrimination.

requires the plaintiff to establish a *prima facie* case of political discrimination by submitting direct or circumstantial evidence that supports his claim that political affiliation was the "primary or motivating factor" in his employer's adverse decision in terminating his employment. Once this evidence is submitted to the Court, the burden shifts to the defendant to show, by preponderance of the evidence, the decision to terminate employment would have been made regardless of the employee's political affiliation. If the reason proffered by the defendant is credible and nondiscriminatory, the plaintiff is then provided a chance to make a showing that political affiliation "was **more likely than not** a motivating factor." Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000). (Emphasis added). Therefore, the plaintiffs may still prevail if it is found they would not have received the same treatment 'but for' their political affiliation. Acosta Sepúlveda v. Hernández Purcell, 889 F.2d 9, 13(1st Cir., 1989).

After a *de novo* review of the Magistrate's Report and Recommendation, the Court found in the record conflicting statements as to the basis for plaintiff's adverse employment action in the form of reports and sworn affidavits presented by both, plaintiff and defendants. Said reports and sworn statements related to one or more events that took place between the weeks before the strike celebrated in front of the Eugenio Maria de Hostos School, on September 12, 2000, and November 18, 2002, when plaintiff was permanently terminated from employment.[2]

Although the Magistrate Judge made clear that some of the sworn statements submitted by plaintiff in relation with her political discrimination claim, rather than being fact based were conclusive and contained legal opinions, she also found that plaintiff placed forth evidence in the record that clearly showed the existence of genuine issues of material fact sufficient to defeat a motion for summary judgment. The Court agrees.

It is known that in shifts in administration from one political party to another "coupled with a plaintiff and a defendant of competing political persuasions may be probative of a political discriminatory *animus*". Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir., 1993). However, in a political discrimination claim, plaintiff must show that there is a nexus between the defendants' conduct to the plaintiff's political beliefs. As stated previously, "[t]he plaintiff must point 'to

---

[2]Gema González in a sworn statement taken on July 9, 2003 declared that she is one of the parents that participated in the strike of September 12, 2000, and that she personally knew that said strike or work stoppage was the result of political discrimination against plaintiff Maritza Santa because she is a New Progressive Party (NPP) sympathizer. She also filed a criminal complaint against plaintiff as a result of an incident that occurred the day of the strike, that incident relating to a cup of hot coffee being spilled over her. (Plaintiff's fact No. 31; Defendants' fact No. 15).

evidence on the record which, if credited, would permit a rational finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." González de Blasini v. Family Department 377 F.3d at 85, LaRou v. Ridlon, 98 F.3d at 662.

The Court agrees with the Magistrate Judge's conclusions as to the record being replete with statements corroborating the fact that plaintiff was well known for her political affiliation, that she was treated differently from other School Directors because her political affiliation, and that the parents and fellow workers who disliked her performance as School Director were affiliated to the opposing political party.[3] Furthermore, it was not until a change in the political power occurred in the year 2000, that the dismissal did not materialize and further plaintiff was replaced in her position by an individual who sympathized with the new administration.

The Court deems that plaintiff has met the required threshold in order to present a *prima facie* case of political discrimination. Unequivocally, for purposes of a §1983 claim, plaintiff has demonstrated a causal relation between defendant's conduct and plaintiffs' political beliefs. La Rou v Ridlon, 98 F.3d at 663. Although defendants have submitted evidence in support of their position that plaintiff was terminated because of several complaints related to misconduct and relating to her duties as a Director, the Court deems that defendants attempt to move the Court to award credibility and weigh the evidence provided by both parties in order to decide the instant motion for summary judgment falls short of the mark. Issues of weighing of evidence and credibility and of motive and intent in the termination of another are better suited for the trier of facts and bar summary judgment. Mulero Rodriguez v. Ponte, Inc., 98 F.3d at 677; Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d at 936; Tew v. Chase Manhattan Bank, 728 F.Supp. 1551, 1555 (S.D.Fla. 1996)(issues of intent and knowledge are better suited for trial rather than summary judgment). Therefore, the defendants' motion for summary judgment moving the Court to dismiss for plaintiff's failure to present a *prima facie* case of political discrimination is hereby **DENIED**.

## DEFENDANTS PERSONAL INVOLVEMENT

In order for a defendant to be liable for its personal involvement in a §1983 claim, said defendant must have been personally involved in the deprivation of rights asserted by plaintiff. Maiorana v. McDonald, 596 F.2d 1076, 1077-1078 (1st Cir. 1979)(*citing* Kostka v. Hogg, 560 F.2d

---

[3] *See* Diana Rondon Torres Sworn Statement, Docket No. 80, Ex. VI; Melissa Maldonado Sustache Sworn Statement, Docket No. 80, Ex. VII; Gema Gonzalez Hernandez's Sworn Statement, Docket No. 80, Ex. IX; Myrta D. Vazquez, Hernandez's Sworn Statement Docket No. 80, Ex. X; Evelyn Davila's Sworn Statement, Docket No. 80, Ex. XI.

37, 40 (1st Cir. 1977). However, in order to impose personal involvement liability, a plaintiff must establish an "affirmative link" between the deprivation of rights asserted by plaintiff and the defendant. Suarez Cestero v. Pagan Rosa, 198 F.Supp.2d 73, 94 (D.P.R. 2002)(*quoting* Lipsett I v. University of Puerto Rico, 637 F.Supp. 789, 800(D.P.R. 1986)). Furthermore, the "affirmative link" may be proved by showing that defendant performed certain acts which either supported, encouraged or acquiesced the conduct. Id.

Defendants challenge the Magistrate Judge's R & R as to determining that the motion for summary judgment should be denied as to defendants' claims that plaintiff failed to prove that the Secretary of Education and that the Superintendent of the School District were personal involved in the personnel actions against plaintiff. The R & R concluded that there was sufficient evidence on the record to support a factual dispute as to the Superintendent's involvement in the termination process as a result of a series of investigations by the Department of Education relating to a strike in the school in which plaintiff served as School Director. The Magistrate Judge reasoned that after the strike and the series of investigations concluded and the opposing political party regaining power, the findings from said investigations were used as the basis for plaintiff's permanent dismissal from employment.

The Court agrees with the Magistrate Judge's findings that there is a dispute of material fact as to defendant Luz Delia Ortiz-Carrasquillo (School Superintendent) personal involvement in the instigation of the strike and knowledge of plaintiff's political affiliation. Plaintiff placed in the record two sworn statements wherein two parents, Gema González and Myrta D. Vázquez Hernández stated that they met with Ortiz-Carrasquillo in her office during the month of August 2000, to discuss a matter related to plaintiff Maritza Santa, at which time Ortiz-Carrasquillo told them that plaintiff was affiliated to New Progressive Party (NPP) and since the current mayor of San Lorenzo was also a member of the NPP he would not do anything against her. (Plaintiff's Fact Exhibit IX and X). Further, plaintiff adduced as evidence a report submitted by Educational Regional Attorney Juan Rosa Mercado in which he concluded that the strike held on September 12, 2000, was for the purpose to interrupt, paralyze and obstruct the services provided by the school, wherefore he concluded that it was illegal. (Plaintiff's Fact No. 30; Exhibit VII).

Further, the Court finds that a dispute of material facts exist as to defendant the Secretary of Education, Cesar Rey Hernández's personal involvement and knowledge of plaintiff's political affiliation. Gema González and Myrta D. Vázquez Hernández further stated that they met on

February 2001, with the Secretary of Education at his Office in the Department of Education Building in San Juan to discuss the removal of plaintiff Maritza Santa Carrasquillo as Director of the Eugenio Maria de Hostos School and that defendant Cesar Rey Hernández promised them that he was going to help them take plaintiff Maritza Santa Carrasquillo out from her position as School Director. (Plaintiff's Fact Exhibit No. IX and X). Therefore, the defendants' motion for summary judgment as to the defendants' personal involvement in actions which culminated in plaintiff's termination from employment is hereby **DENIED**.

## QUALIFIED IMMUNITY DEFENSE

Qualified immunity shields public officials performing discretionary functions from civil damages, so long as their conduct does not violate clearly established statutory or constitutional rights, of which an objectively prudent person would be aware. Harlow v. Fitzgerald 457 U.S. 800, 818 (1982); Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998). Essentially, "[q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v. Lanier, 117 S. Ct. 1219, 1227 (1997) (citations omitted); Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).

A qualified immunity defense requires a two-part analysis: "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would 'have understood that the challenged conduct violated that established right.'" Aponte Matos v. Toledo Davila 135 F.3d 182, 186 (citations omitted). Under the first prong, an official can only be liable for damages if the unlawfulness of his conduct is apparent in light of preexisting law. Anderson v. Creighton, 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d 523. The second prong demands objective reasonableness from the employer: the actions must be such that 'a reasonable [employer] could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting employer] possessed.'" Aponte Matos v. Toledo Davila, 135 F.3d at 186 (quoting Anderson v. Creighton, 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d 523).

Having discussed the applicable two-pronged analysis for a qualified immunity defense, the Court now refrains from applying the test to the facts of the case because there are unresolved issues of fact at this time that obviate the need for such an analysis. Concerning the qualified immunity

defense, the First Circuit has observed the following:

> pretrial resolution sometimes will be impossible because of a *dispute as to material facts*. In such a case, the factual issues *must* be decided by the trier of fact, thereby precluding summary judgment. Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella.

Kelley v. Laforce, 288 F.3d 1, 7 (1st Cir. 2002) (citations omitted) (emphasis added). In the current case, there is a major issue of fact in controversy with respect to the reason, or reasons, the Department terminated plaintiff. The qualified immunity defense cannot be adjudicated until this factual dispute is resolved by the appropriate trier of fact – the jury.

It is often remarked that the Court must always proceed with caution in the qualified immunity context, as the Court now does, because the fact-specific nature of the defense leaves "ample room for mistaken judgments." Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). The aforementioned facts in controversy are enough to keep this Court from taking a headlong leap into the qualified immunity brier patch at this point in time.

As to defendants' qualified immunity defense, the Court agrees with the Magistrate's conclusion that although defendants' were complying with their duties, the same is insufficient to meet the relevant legal standard for qualified immunity, in light of the fact that plaintiff adduced evidence in the form of sworn affidavits showing that defendants' may have been discriminating against plaintiff on the basis of her political affiliation with the NPP. In light that a factual dispute exist regarding defendant Superintendent Luz Delia Ortiz-Carrasquillo involvement in her personal capacity in the instigation of the strike and defendant Cesar Rey Hernández personal capacity involvement in plaintiff suspension and permanent dismissal, the Court finds that plaintiff has shown sufficient evidence to defeat defendants' claim that plaintiff's political affiliation was not a motivating factor behind the strike celebrated on September 12, 2000, and/or plaintiff's employment termination.[4]

---

[4] Gema González stated in a sworn affidavit that a group of parents and her met with Superintendent Luz Delia Ortiz-Carrasquillo at her office to deal with an employment matter related to a teacher of Eugenio Maria de Hostos School and that Ortiz-Carrasquillo told them at said meeting that plaintiff Maritza Santa was NPP and that NPP was in power, that she could not do anything, and therefore they should go on strike.(Plaintiff's Fact Exhibit IX). Furthermore, plaintiff submitted evidence of a report wherein the Educational Regional Attorney, Juan Rosa Mercado concluded that the strike celebrate on September 12, 2000 was illegal and the purpose of said strike was to interrupt, paralyze and obstruct the services provided by the school. (Plaintiff's Fact No. 30; Exhibit VII).

Further, the evidence provided by plaintiff shows that the strike lead to three investigations which were ultimately used by defendant Cesar Rey Hernández as basis for plaintiff's suspension and employment termination. Wherefore, the Court finds that plaintiff meet her burden of showing that her political affiliation was a motivating factor behind the adverse personnel action and that a dispute exist regarding whether both defendants were aware of plaintiff's political affiliation at the time of the adverse employment action and whether her affiliation to the (NPP) was in fact a motivating factor for defendants' personnel transactions.

As the First Circuit has stated, unsettled issues of motive and intent as to the conduct of any party- as may arise in actions of 1983 will normally preclude the Court from granting summary judgment. *See* Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996). Furthermore, it is well settle law, that summary judgment may be appropriate "even in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *See* Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996). However, the Court finds that plaintiff is not resting on merely conclusory allegations or unsupported claims, but have adduced evidence showing she suffered an adverse employment action and that a causal connection exist between the adverse action and her political affiliation.

In the instant case, the Court agrees with the Magistrate Judge's conclusion that there are still unsettled factual issues as to defendants' personal involvement, the nature of the conduct of defendants's towards plaintiff, as well as the motivations behind the adverse employment action. Nevertheless, at the summary judgment stage, the Court may not weigh the evidence or resolve issues of credibility which are better serve in the trial process or after further evidence has been receive. *See* Cortés-Irizarry v. Corporación Insular, 111 F. 3d at 187; *see also* Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (*citing* Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987)). Further, unsettled issues of motive and intent as to the conduct of any party – as may arise in actions under §§ 1983 and 1985 – will normally preclude the Court from granting summary judgment. *See* Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996). Consequently, the defendants' request for summary judgment as to the Qualified Immunity defense is hereby **DENIED** because there are issues of material fact in controversy

precluding acceptance of the suggested Qualified Immunity request. Kelley v. Laforce, 288 F.3d at 7.

## EQUAL PROTECTION CLAIMS

In order for a plaintiff to establish that a governmental action has violated its rights under the Equal Protection Clause under the Constitution of the United States, it must show that defendants acted with discriminatory intent. Richardson v. Leeds Police Department, 71 F.3d 801, 805 (11th Cir. 1995). Consequently, plaintiff must bring forth evidence that defendants beside being aware of her political affiliation acted because of said political affiliation. Rivera v. Puerto Rico Aqueduct and Sewers Authority, 331 F.3d 183, 192 (1st Cir. 2003); Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998); Torres Ocasio v. Melendez, 283 F.Supp.2d 505, 516 (D.P.R. 2003). Consequently, "improper motive" is, therefore, a key element of proof in the instant case, entitling the district court to demand, as already said, that such motive be pleaded not just conclusorily but by **specific, nonconclusory factual** allegations giving rise to a reasonable inference of politically discriminatory intent. Darmouth Review v. Darmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The defendants challenge the Magistrate Judge's R & R basically asserting that plaintiff failed to show that there were others similarly situated employees that were treated differently. Therefore, the equal protection claim should be dismissed. However, plaintiff has provided the sworn declaration of Ms. Melissa Maldonado who worked as a nurse in the school where plaintiff performed her duties as School Director. In its relevant parts, Ms. Melissa Maldonado's declaration provides that in her presence, the defendant, Luz Delia Ortiz, School Superintendent treated other School Directors, specially those who sympathized with her political affiliation, in a manner differently to the way plaintiff was treated. Further, plaintiff has also provided two sworn statements in which it is alleged that the Secretary of Education promised that he would removed plaintiff from the position she held at the Eugenio Maria de Hostos School.[5]

The Court has ruled that at this stage of the proceedings there are genuine issues of material fact precluding brevis disposition inasmuch these facts relate to the personal knowledge by defendants of plaintiff's political affiliation and whether the actions undertaken by defendants were the result of plaintiff's political affiliation. Furthermore, the Court deems that defendants have attempted once again to move the Court into a road which the Court is precluded from traveling

---

[5] *See* Gema Gonzalez Hernandez' Sworn Declaration, Docket No. 80, Ex. IX; and Myrta D. Vazquez Hernandez's Sworn Declaration, Docket No. 80 Ex. X.

insofar as it is requested from the Court to weigh the evidence provided and conclude that plaintiff failed to bring forth that there have been others treated differently.  Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668.

### IV.  CONCLUSIONS

After a *de novo* review of the Magistrate Judge Report and Recommendation, the Court finds that it is precluded from granting defendants' motion for summary judgment due to existing disputes of material fact in the case. Wherefore, the Court **ADOPTS** *in toto* the Magistrate's Report and Recommendation (Docket No. 94), Defendants' *Motion for Summary Judgment* (Docket No. 75) is hereby **DENIED in part**, and defendants' *Motion to Reconsider* (Docket No. 102) is hereby **DENIED**.  The Court schedules a Status Conference for the **19th day of September 2005 at 5:00 p.m.**

**IT IS SO ORDERED**.

In San Juan, Puerto Rico this 9th day of September 2005.

                                                                    **S/DANIEL R. DOMINGUEZ**
                                                                    **DANIEL R. DOMINGUEZ**
                                                                    **U.S. DISTRICT JUDGE**